UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

LANCE WALTERS,

    Plaintiff,

    v.      CAUSE NO. 3:20-CV-316-JD-MGG

DR. LIAW, *et al.*,

    Defendants.

OPINION AND ORDER

Lance Walters, a prisoner without a lawyer, filed a complaint and a motion for preliminary injunctive relief. A filing by an unrepresented party "is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, pursuant to 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

On February 7, 2020, Walters was transferred from the Putnamville Correctional Facility to the Westville Correctional Facility. Prior to the transfer, he was diagnosed with lupus and prescribed hydrocloriquine (sic)[1] to treat it by a doctor at Putnamville. On April 4, 2020, Walters presented at the medication window at Westville and noticed

---

[1] It is likely that Walters is referring to hydroxychloroquine, so the court will refer to it by the correct spelling throughout the rest of the complaint.

that his hydroxychloroquine medication was missing. He asked a nurse where it was, and she replied, "Oh, the doctor must have called and told me to stop it." ECF 1 at 2. She indicated that the doctor was Dr. Liaw, whom Walters alleges he has never met. According to Walters, Dr. Liaw never saw or examined him, yet the hydroxychloroquine was removed from his medication regimen. Without the hydroxychloroquine, which Walters describes as medically necessary to treat his lupus, he is in pain and his "health is in serious danger." *Id*. at 4. He has sued Dr. Liaw, Dorothy Livers, the Medical Service Administrator, and John Gilepaeu,[2] the Warden of the Westville Correctional Facility, for monetary damages and injunctive relief.

Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). On the subjective prong, the plaintiff must establish that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even

---

[2] The Warden of the Westville Correctional Facility is John Galipeau, but the court will refer to him by the spelling Walters uses in his complaint.

though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal quotation marks, brackets, and citations omitted).

Walters describes his lupus as a chronic condition that causes him pain. He alleges that, without his previously prescribed medication to treat it, his health is in serious danger. Giving Walters the benefit of the inferences to which he is entitled at this stage, it is plausible that his lupus is serious and that his previously prescribed medication could constitute a medical need related to that condition. *See McDonald v. Hardy*, 821 F.3d 882, 889 (7th Cir. 2016) ("chronic or degenerative conditions that cause harm that may escalate and have significant future repercussions unless adequately treated" can be objectively serious); *Wynn v. Southward*, 251 F.3d 588, 594 (7th Cir. 2001) (inmate's prescribed heart medication was considered a serious medical need); *West v. Millen*, 79 Fed. Appx. 190, 193 (7th Cir. 2003) ("pain due to the withholding of medication can constitute a serious medical need").

Moreover, it is plausible that Dr. Liaw was deliberately indifferent to Walters's serious medical needs. He alleges that Dr. Liaw refused to administer medication that was both necessary and previously prescribed, even though he had never seen or evaluated Walters. *See Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) (collecting cases and noting that a "delay in treating non-life-threatening but painful conditions may constitute deliberate indifference" and that a "refusal to provide an inmate with prescribed medication or to follow the advice of a specialist can also state an Eighth Amendment claim if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain"). Although further fact-finding may reveal that Dr. Liaw had a valid

reason for discontinuing the medication, based on these allegations, Walters has stated a plausible Eighth Amendment claim against Dr. Liaw for monetary damages.

Walters alleges that he sent numerous healthcare requests and informal grievances to Defendant Livers and the Warden regarding the fact that he was not receiving his previously prescribed hydroxychloroquine.[3] According to Walters, his requests and grievances were ignored. As to Defendant Livers, who Walters describes as the Medical Services Director, he also alleges that she failed to intervene on his behalf or provide him with any medication for his lupus even though he notified her of the issues. Again, although it is possible that there was a reason for Defendant Livers's inaction, at this stage Walters has stated plausible Eighth Amendment claim against her for monetary damages. *See Arnett*, 658 F.3d at 752–53.[4]

However, the same cannot be said for the Warden. There is no general respondeat superior liability under 42 U.S.C. § 1983. *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Id.* "Only persons who cause or participate in the violations are responsible." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). This is especially true in the context of differentiating between medical and non-medical defendants:

---

[3] Of note, Walters alleges that he first noticed the missing hydroxychloroquine on April 4, 2020, which was a Saturday, and signed the instant complaint on April 9, 2020. It is unclear how many healthcare requests/grievances could have been received and/or processed in such a short time, but the court will take Walters at his word that it was "numerous" at this stage of the proceedings.

[4] Walters also alleges that he notified Defendant Livers that he was having a lupus flare and had not received his previously prescribed mobility devices. Not only is this contention unsupported by other relevant factual details in the instant complaint, but Walters is already proceeding on a claim against Defendant Livers based on these same allegations in a separate case currently pending before this court. *See Walters v. Wexford of Indiana, LLC*, cause no. 3:20-CV-230-JD-MGG.

4

> [I]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor.

*Arnett*, 658 F.3d at 755 (citing *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir.2004)). While it is true that non-medical defendants cannot simply ignore the plight of an inmate, a plaintiff must allege that the communication(s) sent to prison officials were sufficient in their "content and manner of transmission" to give those officials "notice to alert him or her to an excessive risk to inmate health or safety." *Id.* (internal quotation marks and citation omitted). This is because "mere negligence in failing to detect and prevent subordinates' misconduct is not sufficient." *Id*. (citing *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996)).

Here, Walters alleges generally that he informed the Warden of Dr. Liaw's decision to discontinue the hydroxychloroquine but the Warden ignored him. This allegation is "too meager" to state a claim. *See id*. at 756; *see also Burks*, 555 at 595 ("[Inmate's] contention that any public employee who knows (or should know) about a wrong must do something to fix it is just an effort to evade, by indirection, *Monell's* rule that public employees are responsible for their own misdeeds but not for anyone else's."). Moreover, whether or not Dr. Liaw's decision to discontinue the hydroxychloroquine ultimately comports with the Eighth Amendment, Walters' health care requests/informal grievances as alleged do not plausibly suggest that the Warden

5

was deliberately indifferent for deferring to Dr. Liaw when he was notified of the situation via those complaints. *See Arnett*, 658 F.3d at 755 ("Non-medical defendants, such as [the Warden], can rely on the expertise of medical personnel.").

As to Walters's request for injunctive relief, however, it is the Warden who is "a proper defendant [for] injunctive relief [and is] responsible for ensuring that any injunctive relief is carried out." *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). Walters may proceed against the Warden in his official capacity to obtain an injunction for constitutionally adequate medical care and medication for his lupus. That said, the specific injunctive relief Walters requests—his previously prescribed hydroxychloroquine—may not be ordered even if it is ultimately determined that his current medical care is inadequate. While it is true that the Warden has both the authority and the responsibility to ensure Walters receives the medical care to which he is entitled under the Eighth Amendment, *Gonzalez*, 663 F.3d at 315, there may be various ways to treat his lupus that do not involve hydroxychloroquine. Simply put, Walters cannot dictate how such medical care is provided or what specific medication he receives. *See Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012) (The Prison Litigation Reform Act mandates that "remedial injunctive relief must be narrowly drawn, extend no further than necessary to correct the violation of the Federal right, and use the least intrusive means necessary to correct the violation of the Federal right.") (internal quotation marks, brackets, and citations omitted)); *see also Forbes v. Edgar,* 112 F.3d 262, 267 (7th Cir. 1997) (Inmates are "not entitled to demand specific care [nor] entitled to the best care possible."). Therefore, injunctive relief—if granted—would be limited to

6

requiring correctional officials to provide medical treatment and medication for Walters's lupus to the extent required by the Constitution.

Walters also raises claims against the Warden regarding his living conditions. He alleges that he notified the Warden that he had only received two bars of soap and that his unit is not receiving cleaning supplies. Additionally, according to Walters, the vents are dirty and clogged, the air circulation is poor and dust is everywhere, there are too many inmates close together, there is exposure to asbestos, the unit is "infested with black mold," and the water in the bathrooms "comes out milky and at times rusty yellow." ECF 1 at 3–4. Walters claims that he has been previously diagnosed with asthma and allergies and that, as a direct result of these conditions, he is suffering from breathing issues.

The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008). In evaluating this type of Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer*, 511 U.S. at 834. The objective prong asks whether the alleged deprivation is "sufficiently serious." *Id*. "[T]he Constitution does not mandate comfortable prisons . . . ." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). However, inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). Subjectively, the prisoner must show the defendant acted with deliberate indifference to the inmate's health or safety. *Farmer*, 511 U.S. at 834; *see also Reed v. McBride*, 178 F.3d 849, 855 (7th Cir. 1999) (where inmate

7

complained about severe deprivations but was ignored, he established a "prototypical case of deliberate indifference") (citation omitted).

As to the objective prong, the Seventh Circuit has noted that "[s]ome conditions of confinement may establish an Eighth Amendment violation in combination when each alone would not do so." *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) (citation omitted). In *Gray*, the court acknowledged that the plaintiff's allegations of vermin infestation, lack of cleaning and sanitation supplies, limited access to soap, and generally dirty and dusty conditions did not amount to Eighth Amendment violations standing alone; however, combined as a whole in light of the plaintiff's claim that he suffered worsening asthma attacks because of them, they did. *Id*. at 1005–08; *see also Davis v. Williams*, 216 F. Supp. 3d 900, 906–10 (N.D. Ill. 2016) (collecting Seventh Circuit cases describing conditions related to drinking water, inadequate ventilation, dirty vents, and lack of cleaning supplies, and determining that—collectively—the plaintiff's allegations were sufficient to state a plausible claim). Here, taken together and considering the fact that Walters has alleged the conditions have negatively affected his preexisting asthma and allergies causing him to suffer breathing issues, it is plausible that the conditions described are objectively sufficiently serious enough to constitute a deprivation under the Eighth Amendment.

As to the subjective prong, a plaintiff does not need to prove that the warden "acted or failed to act believing that harm actually would befall" him; instead, if he shows that he "acted or failed to act despite his knowledge of a substantial risk," that is enough. *Farmer*, 511 U.S. at 842. "Evidence that the warden 'must have known' about

8

the risk of physical or psychological harm resulting from the unsanitary conditions is sufficient for a jury to find deliberate indifference." *Gray*, 826 F.3d at 1008 (citing *Sanville v. McCaughtry*, 266 F.3d 724, 737 (7th Cir. 2001)). Here, Walters alleges that he "notified" the Warden about the conditions through an informal grievance which described each issue in detail. He also alleges that the Warden "knows" about the conditions and the associated health issues. Despite this, however, Walters claims that the Warden ignored his written notification and has taken no action whatsoever. At this stage, giving Walters the benefits to which he is entitled, he has plausibly alleged that the Warden has been deliberately indifferent to the risk the conditions pose to Walters. Therefore, Walters has stated plausible Eighth Amendment claim against him for monetary damages.

He has also stated a plausible claim against the Warden for injunctive relief related to these allegations. *See Gonzalez*, 663 F.3d at 315. Walters may proceed against the Warden in his official capacity to obtain an injunction to be housed in constitutionally adequate living conditions. As a reminder, however, Walters is not entitled to dictate how any allegedly deficient conditions are remedied. *See Westefer*, 682 F.3d at 683. Therefore, injunctive relief—if granted—would be limited to requiring correctional officials to provide adequate living conditions to the extent required by the Constitution.

Finally, with regard to the motion for preliminary injunctive relief, a "preliminary injunction is an extraordinary and drastic remedy, one that should not be

granted unless the movant, *by a clear showing*, carries the burden of persuasion."

*Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original).

> To obtain a preliminary injunction, a plaintiff must first show that: (1) without such relief, it will suffer irreparable harm before final resolution of its claims; (2) traditional legal remedies would be inadequate; and (3) it has some likelihood of success on the merits. If a plaintiff makes such a showing, the court next must weigh the harm the plaintiff will suffer without an injunction against the harm the defendant will suffer with one. This assessment is made on a sliding scale: The more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor. Finally, the court must ask whether the preliminary injunction is in the public interest, which entails taking into account any effects on non-parties. Ultimately, the moving party bears the burden of showing that a preliminary injunction is warranted.

*Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018) (citations and quotation marks omitted). Here, Walters has alleged that he is not receiving his prescribed lupus medication, which is causing him pain and is putting his health at risk. He also alleges that his living conditions are negatively affecting his asthma and allergies, resulting in breathing problems. The court will defer ruling on the motion until the Warden has filed a response and Walters has had an opportunity to reply.

For these reasons, the court:

(1) GRANTS Lance Walters leave to proceed against Dr. Liaw and Dorothy Livers in their individual capacities for monetary damages for failing to provide him with constitutionally adequate medical care, including any necessary medication, for his previously diagnosed lupus condition beginning on April 4, 2020, in violation of the Eighth Amendment;

(2) GRANTS Lance Walters leave to proceed against Warden John Gilepeau in his official capacity for injunctive relief to ensure he is provided with constitutionally adequate medical care, including any necessary medication, for his previously diagnosed lupus condition as required by the Eighth Amendment;

(3) GRANTS Lance Walters leave to proceed against Warden John Gilepeau in his individual capacity for monetary damages for housing him in substandard conditions of confinement, which has aggravated his preexisting asthma and allergies and caused breathing issues, in violation of the Eighth Amendment;

(4) GRANTS Lance Walters leave to proceed against Warden John Gilepeau in his official capacity for injunctive relief to provide him with constitutionally adequate living conditions as required by the Eighth Amendment;

(5) DISMISSES all other claims;

(6) DIRECTS the clerk to request Waiver of Service from (and, if necessary, the United States Marshals Service to serve process on) Dr. Liaw and Dorothy Livers at Wexford of Indiana, LLC, with a copy of this order and the complaint (ECF 1), pursuant to 28 U.S.C. § 1915(d);

(7) ORDERS the Indiana Department of Correction and Wexford of Indiana, LLC, to provide the United States Marshal Service with the full name, date of birth, social security number, last employment date, work location, and last known home address of any defendant who does not waive service if they have such information;

(8) DIRECTS the clerk to request Waiver of Service from (and, if necessary, the United States Marshals Service to serve process on) Warden John Gilepeau at the

Indiana Department of Correction with a copy of this order, the complaint (ECF 1), and the motion for preliminary injunctive relief (ECF 4), pursuant to 28 U.S.C. § 1915(d);

(9) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), Dr. Liaw, Dorothy Livers, and Warden John Gilepeau to respond to the complaint, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which Lance Walters has been granted leave to proceed in this screening order; and

(10) ORDERS Warden John Gilepeau to file and serve by **May 12, 2020**, a response to the motion for preliminary injunctive relief (ECF 4) with a sworn statement (and supporting medical documentation as necessary) explaining how Lance Walters is receiving constitutionally adequate medical care, including any necessary medication, for his previously diagnosed lupus condition, and how Lance Walters is being housed in living conditions consistent with the Eighth Amendment.

SO ORDERED on May 1, 2020

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT